# No. 24-3789

# United States Court of Appeals for the Ninth Circuit

MARLI BROWN AND LACEY SMITH,
*Plaintiffs-Appellants,*

v.

ALASKA AIRLINES, INC. AND
ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Washington at Seattle
Hon. Barbara J. Rothstein, Case No. 2:22-cv-668-BJR

## APPELLEE'S PETITION FOR
## PANEL REHEARING OR FOR REHEARING EN BANC

Lauren Parris Watts
lpwatts@seyfarth.com
Josh M. Goldberg
jmgoldberg@seyfarth.com
Seyfarth Shaw LLP
999 Third Avenue, Suite 4700
Seattle, WA 98104
Ph: (206) 946-4910

Lynn A. Kappelman
lkappelman@seyfarth.com
Dawn R. Solowey
dsolowey@seyfarth.com
Seyfarth Shaw LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
Ph: (617) 946-4800

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................I

TABLE OF AUTHORITIES ...........................................................................II

INTRODUCTION ..........................................................................................1

ARGUMENT ..................................................................................................4

I.  THE OPINION IGNORED *VILLIARIMO* AND OTHER NINTH CIRCUIT PRECEDENTS .............................................................................5

    A.  The Majority Failed to Consider or Apply This Court's Precedents………………………………………………………...5

    B.  The Majority Improperly Relied Upon the *Damiano* Decision..8

II.  THE MAJORITY'S BASES FOR DEPARTING FROM ESTABLISHED LAW WERE ERRONEOUS ...........................................9

    A.  The Majority Erroneously Imputed AFA's Statements to Alaska…………………………………………………………9

    B.  The Majority Erred By Acting as a "Super-Personnel Board" In Evaluating Alaska's Reaction to Plaintiffs' Posts……………12

    C.  The Majority Incorrectly Lumped Ms. Brown and Ms. Smith Together………………………………………………………14

CONCLUSION ............................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett v. California*,
147 F. App'x 679 (9th Cir. 2005) ......................................................... 6

*Bodett v. Coxcom, Inc.*,
366 F.3d 736 (9th Cir. 2004) ............................................................... 7

*Braaten v. Newmont United States Ltd.*,
711 F. App'x 432 (9th Cir. 2018) ......................................................... 6

*Carr v. Garland*,
No. 22-56135, 2024 U.S. App. LEXIS 5630 (9th Cir. Mar. 8,
2024) ..................................................................................................... 6

*Conti v. Am. Axle & Mfg.*,
326 F. App'x 900 (6th Cir. 2009) ....................................................... 11

*Coyaso v. Bradley Pac. Aviation, Inc.*,
578 F. App'x 715 (9th Cir. 2014) ......................................................... 6

*Culver v. Qwest Communs. Corp.*,
306 F. App'x 403 (9th Cir. 2009) ......................................................... 6

*Damiano v. Grants Pass Sch. Dist. No. 7*,
140 F.4th 1117 (9th Cir. 2025) ............................................. 5, 8, 9, 15

*Dominguez-Curry v. Nevada Transp. Dep't*,
424 F.3d 1027 (9th Cir. 2005) ..................................................... 10, 11

*Fazeli v. Bank of Am., NA*,
525 F. App'x 570 (9th Cir. 2013) ............................................. 6, 13, 14

*Fried v. Wynn Las Vegas, LLC*,
No. 20-15710, 2021 U.S. App. LEXIS 34269 (9th Cir. Nov. 18,
2021) ..................................................................................................... 6

*Hardin v. S.C. Johnson & Son, Inc.*,
167 F.3d 340 (7th Cir. 1999) ............................................................. 11

ii

*Joseph v. Marco Polo Network, Inc.*,
   No. 09 Civ. 1597, 2010 U.S. Dist. LEXIS 119713 (S.D.N.Y. Nov.
   10, 2010) ................................................................................................1

*Junior v. Sonoma Cnty. Superior Ct.*,
   No. 24-5320, 2025 U.S. App. LEXIS 31980 (9th Cir. Dec. 8, 2025) .............6, 9

*Kama v. Mayorkas*,
   107 F.4th 1054 (9th Cir. 2024) ..............................................................6

*Killingsworth v. State Farm Mut. Auto. Ins. Co.*,
   254 F. App'x 634 (9th Cir. 2007) .......................................................6, 7

*Kissner v. Loma Prieta Joint Union Elem. Sch. Dist.*,
   No. 24-1261, 2025 U.S. App. LEXIS 1435 (9th Cir. Jan. 22, 2025) ...................6

*Matthews v. Wal-Mart Stores, Inc.*,
   417 F.App'x 552 (7th Cir. 2011) ...........................................................4

*Miller v. Clark Cty. Sch. Dist.*,
   378 F. App'x 623 (9th Cir. 2010) ...........................................................6

*Mitchell v. McAleenan*,
   783 F. App'x 791 (9th Cir. 2019) ...........................................................6

*Norris v. City and Cty. of San Francisco*,
   900 F.2d 1326 (9th Cir. 1990) ..............................................................14

*Peterson v. Hewlett-Packard Co.*,
   358 F.3d 599 (9th Cir. 2004) ................................................................7

*Robinson v. Adams*,
   847 F.2d 1315 (9th Cir. 1987) ..............................................................17

*Sampson v. Konica Minolta Bus. Sols. USA, Inc.*,
   No. 23-15458, 2024 U.S. App. LEXIS 17225 (9th Cir. July 15,
   2024) ..................................................................................................6

*Sheehan v. Donlen Corp.*,
   173 F.3d 1039 (7th Cir. 1999) ..............................................................10

*Steele v. Kroenke Sports Enters., L.L.C.*,
   264 F. App'x 735 (10th Cir. 2008) ........................................................11

iii

*Thomas v. Harker*,
   No. 18-16640, 2021 U.S. App. LEXIS 20541 (9th Cir. July 12,
   2021) .................................................................................................6

*Usher v. Sacramento Cty.*,
   91 F. App'x 11 (9th Cir. 2004) ..........................................................6

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ...................................................*passim*

*Wong v. Wells Fargo Bank, NA*,
   501 F. App'x 664 (9th Cir. 2012) .......................................................6

*Young v. Trinity Prop. Consultants, LLC*,
   174 F. App'x 404 (9th Cir. 2006) .......................................................6

## Other Authorities

Fed. R. App. P. 40 ..................................................................................4, 5

*Found! Thomas Jefferson's Letter to His Nephew*, NEWPORT
   HISTORICAL SOCIETY (Apr. 13, 2010),
   https://newporthistory.org/found-thomas-jeffersons-letter-to-his-
   nephew/ ..............................................................................................16

*Morality*, BLACK'S LAW DICTIONARY (12th ed. 2024) ............................16

*Morality*, MERRIAM-WEBSTER.COM DICTIONARY,
   https://www.merriam-webster.com/dictionary/morality (last visited
   July 7, 2026).......................................................................................16

## **INTRODUCTION**

Defendant-Appellee Alaska Airlines ("Alaska") respectfully submits this petition for panel rehearing or, in the alternative, rehearing *en banc*, of the June 24, 2026 Opinion (the "Opinion"). The Opinion effectively overrules Ninth Circuit precedent and fundamentally alters Title VII law in this Circuit. The Court should grant rehearing, vacate the Opinion, and affirm the District Court.

Plaintiffs-Appellants Marli Brown and Lacey Smith (collectively, "Plaintiffs") were terminated from Alaska after violating the company's anti-harassment and anti-discrimination policies. Ms. Smith—who was on probation for previously violating Alaska's policies—posted a comment on Alaska's intranet site regarding Alaska's support for passage of the proposed Equality Act, which would extend federal nondiscrimination protections to LGBTQIA+ individuals in certain circumstances. Ms. Smith questioned whether it was possible to "regulate morality," obviously implying that LGBTQIA+ individuals are "immoral." *See* 3-AlaskaER-777-81. Other Alaska employees undisputedly interpreted the post in that way. *See, e.g.,* 3-AlaskaER-780.

Subsequently, and separately, Ms. Brown posted a comment about the Equality Act, stating that its passage would lead to the suppression of religious freedom, endanger Christian churches, and "obliterat[e] women rights and parental rights." 3-AlaskaER-817. She further suggested that the Equality Act would

1

"enable[] sexual predators to exploit the rules and gain easy access to victims." *Id.* The only reasonable interpretation of this post is that it was an attack on LGBTQIA+ individuals. Again, the undisputed evidence showed that other Alaska employees interpreted the post in this manner. *See, e.g.,* 2-AlaskaER-287-88, 293-94, 300-01, 309-10, 313-16; 3-AlaskaER-578-79, 597, 777-78, 802-03.

Alaska concluded that these posts, and their obvious implications, violated the company's anti-harassment and anti-discrimination policies. Alaska terminated Plaintiffs, not because of their religious beliefs, but because they violated these policies. Plaintiffs sued, claiming, *inter alia*, religious discrimination under Title VII and state-law analogues. The District Court properly concluded that, under these circumstances, Alaska was entitled to summary judgment.

The District Court's decision followed existing law in this Circuit and other Circuit Courts of Appeal. In *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002), this Court held that in considering an employer's proffered reason for an adverse employment action, "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* at 1063. This Court also repeatedly held that when an employee makes a statement that violates company policy, that employee can be terminated even if their statement was motivated by religious beliefs. The Court has further held that specific, substantial evidence is required to show an issue of fact as to

2

discriminatory intent or pretext. And both this Court and numerous Circuit Courts of Appeals have held that only statements by the employer's decisionmakers are relevant to establishing the employer's motivation or pretext.

The panel majority ignored these principles and acted well outside the bounds of existing law. *First*, the majority attributed comments made by representatives of a *different* party—the Association of Flight Attendants-CWA AFL-CIO ("AFA")—to Alaska, even though AFA was undisputedly not the decisionmaker in Alaska's determination to terminate Plaintiffs, and even though Alaska and AFA are not similarly situated.[1] *Second*, the majority apparently believed that Alaska overreacted to Plaintiffs' posts, questioning Alaska's interpretation of its policies and illogically asserting that because Alaska made the decision to terminate Plaintiffs, rather than impose a lesser sanction, Alaska could have had discriminatory intent. In so doing, and although it claimed otherwise, the majority improperly acted as a "super-personnel board," as Judge Morgan Christen noted in her partial dissent.

*Third*, and perhaps most problematically, as Judge Christen also noted, the majority inexplicably linked Ms. Smith and Ms. Brown together in order to find issues of fact as to Ms. Smith's claim. The majority did so even though, unlike Ms. Brown, Ms. Smith was already on probation; her post did not reference any

---

[1] Plaintiffs asserted separate causes of action against AFA.

religious views; and she did not raise any religious views during the subsequent investigation.

Respectfully, none of the factors relied upon by the majority was sufficient to defeat summary judgment under existing Ninth Circuit precedent. As a result, although the majority asserted that its decision was limited to the unique facts of this case, the consequences of the Opinion, if it stands, are wide-ranging. The Opinion would, essentially, render *Villiarimo* and other authorities dead-letters, causing a radical transformation of Title VII law in this Circuit and rendering this Circuit an outlier among Circuit Courts of Appeal.

The majority's approach would also create an irreconcilable conflict for employers when an employee engages in discriminatory conduct allegedly inspired by religious beliefs: either discipline that employee and run the risk of a religious discrimination claim, or allow the discriminatory conduct to continue and risk a hostile work environment claim based on the employee's conduct. The Opinion would thus force employers to sit "on the razor's edge of liability," contrary to the intent of Title VII. *See Matthews v. Wal-Mart Stores, Inc.*, 417 F.App'x 552, 554 (7th Cir. 2011). Rehearing is warranted to correct these errors.

## ARGUMENT

"A party may seek rehearing of a decision through a petition for panel rehearing, a petition for rehearing en banc, or both." Fed. R. App. P. 40(a). With

respect to panel rehearing, the petition must "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended." *Id.* at 40(b)(1)(A). Rehearing *en banc* is warranted when, among other things, it is "necessary to secure or maintain uniformity of the court's decisions." *Id.* at 40(b)(2)(A). Situations where en banc review is appropriate include: "the panel decision conflicts with a decision…of the court to which the petition is addressed" and where "the panel decision conflicts with an authoritative decision of another United States court of appeals." *Id.* at 40(b)(2)(A) and (C).

Panel rehearing or *en banc* rehearing is warranted because the Opinion departed from this Court's prior precedents and from the authoritative decisions of other Circuit Courts of Appeal.

## I. THE OPINION IGNORED *VILLIARIMO* AND OTHER NINTH CIRCUIT PRECEDENTS.

The majority relied extensively on an inapposite decision—*Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117 (9th Cir. 2025)—while ignoring *Villiarimo*, *supra*, and numerous other Ninth Circuit precedents. *See* Opinion at 19-21, 24, 27-29, 36. If the Opinion stands, Title VII precedent in this Circuit will be upended. Rehearing is needed to avoid that outcome.

### A. The Majority Failed to Consider or Apply This Court's Precedents.

In *Villiarimo*, this Court held that a Title VII plaintiff attempting to avoid

summary judgment on pretext grounds cannot simply argue that the employer's rationale was objectively false, *i.e.*, that the employee did not actually violate the company policy in question. *See* 281 F.3d at 1063. If the employer honestly believed its non-discriminatory reason for its actions, "even if its reason is 'foolish or trivial or even baseless,'" the employer is entitled to summary judgment unless the employee submits "evidence that [the employer] did not honestly believe its proffered reasons." *See id.* This Court repeatedly reaffirmed that principle, including as recently as December 2025.[2]

In order to avoid summary judgment on this basis, a plaintiff must do more

---

[2] *Junior v. Sonoma Cnty. Superior Ct.*, No. 24-5320, 2025 U.S. App. LEXIS 31980, at *4-7 (9th Cir. Dec. 8, 2025) (affirming summary judgment in favor of employer); *Kissner v. Loma Prieta Joint Union Elem. Sch. Dist.*, No. 24-1261, 2025 U.S. App. LEXIS 1435, at *3-4 (9th Cir. Jan. 22, 2025) (same); *Kama v. Mayorkas*, 107 F.4th 1054, 1063 (9th Cir. 2024) (same); *Sampson v. Konica Minolta Bus. Sols. USA, Inc.*, No. 23-15458, 2024 U.S. App. LEXIS 17225, at *6-9 (9th Cir. July 15, 2024) (same); *Carr v. Garland*, No. 22-56135, 2024 U.S. App. LEXIS 5630, at *7-9 (9th Cir. Mar. 8, 2024) (same); *Fried v. Wynn Las Vegas, LLC*, No. 20-15710, 2021 U.S. App. LEXIS 34269, at *4-5 (9th Cir. Nov. 18, 2021) (same); *Thomas v. Harker*, No. 18-16640, 2021 U.S. App. LEXIS 20541, at *3-5 (9th Cir. July 12, 2021) (same); *Mitchell v. McAleenan*, 783 F. App'x 791, 792 (9th Cir. 2019) (same); *Braaten v. Newmont United States Ltd.*, 711 F. App'x 432, 432-33 (9th Cir. 2018) (same); *Coyaso v. Bradley Pac. Aviation, Inc.*, 578 F. App'x 715, 717-18 (9th Cir. 2014) (same); *Fazeli v. Bank of Am., NA*, 525 F. App'x 570, 571-72 (9th Cir. 2013) (same); *Wong v. Wells Fargo Bank, NA*, 501 F. App'x 664, 665 (9th Cir. 2012) (same); *Miller v. Clark Cty. Sch. Dist.*, 378 F. App'x 623, 627 (9th Cir. 2010) (same); *Culver v. Qwest Communs. Corp.*, 306 F. App'x 403, 405 (9th Cir. 2009) (same); *Killingsworth v. State Farm Mut. Auto. Ins. Co.*, 254 F. App'x 634, 637 (9th Cir. 2007) (same); *Young v. Trinity Prop. Consultants, LLC*, 174 F. App'x 404, 405-06 (9th Cir. 2006) (same); *Barrett v. California*, 147 F. App'x 679, 680-81 (9th Cir. 2005) (same); *Usher v. Sacramento Cty.*, 91 F. App'x 11, 13-14 (9th Cir. 2004) (same).

6

than merely assert that the employer did not hold an honest belief; the employee must present specific, substantial evidence to that effect. *See* Alaska Br. at 26-27 (collecting Ninth Circuit authorities); *see also, e.g., Killingsworth*, 254 F. App'x at 637 (under *Villiarimo* standard, plaintiff must offer "specific and substantial" evidence (internal quotation marks omitted)). Applying that standard, this Court frequently rejects claims by plaintiffs who violate company policies, but assert that they can avoid summary judgment because their violations were motivated by religious beliefs. *See, e.g.,* Alaska Br. at 16-19 (citing *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 745 (9th Cir. 2004) and *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 601-02 (9th Cir. 2004)).

The majority did not address *Villiarimo* or the "specific and substantial" evidence standard. The majority addressed *Bodett* and *Peterson* in only cursory fashion, suggesting that because those cases "involve[d] direct employee-to-employee harassment," their holdings were inapplicable. Opinion at 28-29. If anything, the fact that Plaintiffs' disparaging comments were broadcast to approximately 26,000 people, *see id.* at 60 (Christen, J., dissenting), rather than to only one individual, **underscores** that Alaska acted appropriately to enforce its policies.

Rather than apply *Villiarimo*, *Bodett*, *Peterson*, the "specific and substantial standard," and this Court's prior precedents, the majority ignored them. The

7

majority reversed the District Court despite the lack of ***any*** evidence—let alone "specific and substantial evidence"—that Alaska did not "honestly believe" its rationale for firing Plaintiffs. Rehearing is necessary to correct those errors and preserve uniformity in Ninth Circuit law regarding Title VII and alleged employment discrimination.

**B.      The Majority Improperly Relied Upon the *Damiano* Decision.**

To avoid following the extensive Ninth Circuit precedent described above, the majority relied heavily on a recent decision, decided after briefing was completed in this appeal: *Damiano*, *supra*. *See* Opinion at 19, 20, 21, 24, 27, 28, 29, 30, 36. The employer in *Damiano*, like Alaska here, "contend[ed] that the [employer] terminated Plaintiffs because they violated multiple [employer] policies." *Damiano*, 140 F.4th at 1156. Unlike in this case, however, in *Damiano*, the employer "d[id] not actually argue that, viewing the record in the light most favorable to Plaintiffs, any reasonable factfinder would find that they violated those policies." *See id.* In other words, the employer in *Damiano* effectively conceded that there were issues of fact. *See id.*

Here, however, Alaska does ***not*** concede any issues of fact about whether Plaintiffs violated Alaska's policies. *See* Alaska Br. at 15-19, 39-42. It is impossible for a reasonable factfinder to view Plaintiffs' posts as anything other than discriminatory comments regarding LGBTQIA+ individuals—as borne out by

8

the volume of complaints Alaska undisputedly received about Plaintiffs' posts—and thus as having violated Alaska's policies. *See* pgs. 1-2, *supra*. In any event, as discussed above and further below, there was *no* evidence in the record from which a reasonable factfinder could conclude that Alaska lacked an "honest belief" in the basis for its termination decisions. *Damiano* does not support the majority's departure from *Villiarimo* and other precedents.

## II. THE MAJORITY'S BASES FOR DEPARTING FROM ESTABLISHED LAW WERE ERRONEOUS.

Rather than hold Plaintiffs to their burden of proof, the majority effectively overruled or gutted *Villiarimo* and the other authorities discussed above, including this Court's December 2025 application of *Villiarimo* in *Junior*, *supra*. Because there was no "specific and substantial" evidence in the record indicating that Alaska's conduct was motivated by religious discrimination; that its explanation for Plaintiffs' terminations was pretext; or that Alaska lacked an "honest belief" in its stated rationale for the terminations, the majority had to depart from Ninth Circuit precedent in order to reverse the District Court. To preserve the existing law in this Circuit, rehearing is warranted.

### A. The Majority Erroneously Imputed AFA's Statements to Alaska.

The majority's holding that Plaintiffs raised issues of triable fact was driven largely by comments made by a *different* party: AFA. *See* Opinion at 24-25, 35. AFA and Alaska are not similarly-situated, however; Alaska was Plaintiffs'

9

employer, while AFA is a union. *See id.* at 6-8. Plaintiffs asserted separate claims against AFA. *See id.* The majority never explained how or why statements by AFA could show possible discrimination by *Alaska*, and the majority never cited any legal authority supporting its assertion that AFA's comments could be used to create issues of facts as to *Alaska*. *See id.* at 24-25, 35.

The majority's cited authorities actually ***confirm*** that it departed from existing law. In *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005) (cited in Opinion at 25), this Court held that "[w]here ***a decisionmaker*** makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision." *Dominguez-Curry*, 424 F.3d at 1038 (emphasis added). Similarly, in *Sheehan v. Donlen Corp.*, 173 F.3d 1039 (7th Cir. 1999) (cited in Opinion at 25), comments by one of the plaintiff's supervisors, who was a ***decisionmaker*** in the decision to terminate the plaintiff, were sufficient to give rise to an issue of triable fact. *See Sheehan*, 173 F.3d at 1044.[3]

---

[3] The majority briefly referenced an email exchange between individuals at Alaska, during which an Alaska employee wrote "[e]mployees actually do not have the right to believe that LGBTQ rights are 'immoral.'" *See* Opinion at 24. The majority appeared to misconstrue the emails as commenting on employees' right to hold religious beliefs, when in fact the exchange related to advice from in-house counsel regarding the permissible expression of beliefs under Alaska's policies. *See id.* at 9-10.

Here, AFA's comments were comments by union personnel, not by the individuals at Alaska who made the decision to terminate Plaintiffs. As a matter of existing law, AFA's comments were insufficient to create a triable issue of fact as to whether *Alaska* violated Title VII. *See, e.g., Dominguez-Curry*, 424 F.3d at 1038. As Judge Christen pointed out in dissent, AFA's statements "may [not] be attributed to Alaska's decision-maker, and nothing in the record supports the suggestion that the union made the decision to terminate [Ms.] Smith." Opinion at 57-58 (Christen, J., dissenting).

Judge Christen was correct; the majority's view was, respectfully, contrary to law. *See, e.g., Steele v. Kroenke Sports Enters., L.L.C.*, 264 F. App'x 735, 745 (10th Cir. 2008) ("Kroenke Sports cannot be held directly liable [under Title VII] for the comment, which was not made by its personnel"); *see also, e.g., Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 910 (6th Cir. 2009) ("[s]tatements by nondecisionmakers…cannot suffice to satisfy the plaintiff's burden . . . of demonstrating animus" (internal quotation marks and brackets omitted)); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 347 (7th Cir. 1999) (non-decisionmaker's "purported statements cannot provide the basis for a determination of discrimination").

Because AFA's statement was insufficient, as a matter of existing law, to create a triable issue of fact as to Plaintiffs' claims against *Alaska*, the record was

11

devoid of any evidence that Alaska acted with discriminatory intent or that its explanations were pretext. The majority's contrary holding was a radical departure from the existing law in this Circuit and other Circuits. Rehearing is, accordingly, warranted.

**B.    The Majority Erred By Acting as a "Super-Personnel Board" In Evaluating Alaska's Reaction to Plaintiffs' Posts.**

The majority also stated that "a reasonable jury could disagree" that Plaintiffs' posts violated Alaska's policies and "find [Alaska's] description overwrought or misleading." Opinion at 27, 36. The majority suggested that it reached this holding because the majority itself believed Alaska's view was "overwrought or misleading," since, in the majority's view, the posts did "not discuss Alaska employees." *See id.* It is undisputed that Alaska determined that the posts disparaged LGBTQIA+ individuals—who are part of Alaska's employee population—and that Alaska's employees interpreted the posts in the same way. *See id.* at 13-16; pgs. 1-2, *supra*.

The majority also illogically concluded that because Alaska chose to terminate Plaintiffs for violating Alaska's policies, rather than impose a lesser sanction, that somehow evidenced religious discrimination—even though the majority admitted that Alaska undisputedly terminated employees without first imposing lesser sanctions in certain circumstances. *See id.* at 8, 26. The majority

12

also never explained how Alaska's decision to proceed straight to termination was evidence specifically of *religious* discrimination. *See id.* at 26.

By ignoring Alaska's interpretation of its policies, and reaching its own judgment about whether Plaintiffs should have been terminated or subjected to some lesser discipline under those policies, the majority deviated from this Court's precedents. As Judge Christen noted, "[t]he majority's disagreement with Alaska's characterization of [Ms.] Smith's comment is insufficient to defeat summary judgment," lest this Court turn into a "super-personnel department." *Id.* at 60-61 (Christen, J., dissenting). Although the majority acknowledged that a court is not to act as a "super-personnel board," *id.* at 28, it did exactly that.

Again, under this Court's precedent "[w]hether the [employer] correctly interpreted its….policy is irrelevant if it 'honestly believed its reason[s] for its actions,' even if those reasons were 'foolish or trivial or even baseless.'" *Fazeli*, 525 F. App'x at 572 (quoting *Villiarimo*, 281 F.3d at 1063). The majority may have disagreed with Alaska's interpretation of its policies or of Plaintiffs' posts, or Alaska's view that under the policies it was appropriate to go straight to termination, as Alaska had undisputedly done in the past. *See* Opinion at 8. Respectfully, the inquiry was not whether the majority would have done things differently had it been the employer. The inquiry was whether there was "specific and substantial" evidence in the record indicating that the employer's explanation

13

is "unworthy of credence." *See Fazeli*, 525 F. App'x at 572 (internal quotation marks omitted) (quoting *Norris v. City and Cty. of San Francisco*, 900 F.2d 1326, 1330 (9th Cir. 1990)).

Here, there was no such evidence, or ***any*** evidence that Alaska did not honestly believe that Plaintiffs' posts violated its policies. The fact that the posts were discriminatory, and therefore violated Alaska's policies, is borne out by the undisputed fact that numerous Alaska employees complained to Alaska about Plaintiffs' posts. *See* pgs. 1-2, *supra*. By holding otherwise, the majority acted contrary to the law in this Circuit.

### C. The Majority Incorrectly Lumped Ms. Brown and Ms. Smith Together.

The majority ultimately declined to decide whether Ms. Smith's Title VII claim against Alaska could stand on its own. *See* Opinion at 35-36. Instead, the majority held that because Alaska investigated and terminated Ms. Brown and Ms. Smith at the same time, and because it concluded Ms. Brown's post was overtly religious, Alaska could have deduced that Ms. Smith's post also related to her religious beliefs. *See* Opinion at 35-36. The majority then contended that, because Alaska purportedly could have inferred that Ms. Smith's post was religious in nature, there were triable issues of fact as to whether Alaska's actions were based on religious discrimination. *See id.*

14

The majority did not cite to any legal authority for the notion that Ms. Brown's circumstances have any bearing on the analysis of Ms. Smith's claims. *See id.*[4] The majority also did not explain why–even if Alaska could have inferred Ms. Smith's religious motivations for the posts –that would alone be sufficient to create a triable issue as to whether Alaska acted ***because of*** Ms. Smith's religious views. *See id.*; *see also, e.g., Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597, 2010 U.S. Dist. LEXIS 119713, at \*33-34 (S.D.N.Y. Nov. 10, 2010) ("The mere fact that [employer] may have been aware that [plaintiffs] were Muslims is not probative of discrimination in the absence of evidence that [employer] held any beliefs about Muslims in general or the plaintiffs' religion in particular").

As Judge Christen explained, the majority's approach was erroneous, and contrary to *Villiarimo* and other Ninth Circuit precedents, because Ms. Brown's and Ms. Smith's circumstances were different. *See* Opinion at 49-62 (Christen, J., dissenting). At the time of the at-issue intranet posts, Ms. Smith was on probation for having previously violated Alaska's policies. *See id.* at 51-52. Ms. Smith did not make any references to religion in her intranet post; instead her post asked if Alaska thought that "it's possible to regulate morality?" *See id.* at 52-53.

---

[4] The majority included a brief citation to the inapposite *Damiano* decision, discussed *supra* pgs. 8-9. The majority cited *Damiano* on the question of whether Alaska's explanation for its action was pretextual, however, not for its assertion that Ms. Brown's separate circumstances were relevant to Ms. Smith.

The majority argued that the reference to "morality" should have been construed as a religious comment, citing to a single EEOC guideline. *See* Opinion at 34. As Judge Christen pointed out, "references to morality are not inherently religious…. People of many faiths, including those with no religious affiliation, make moral judgments." *See id.* at 56 (Christen, J., dissenting).

Indeed, the majority's approach is, respectfully, inconsistent with the normal understanding of the word "morality," which does not automatically include a religious connotation. As Thomas Jefferson put it when writing about "morality," humans are "endowed with a sense of right and wrong," such that "[t]he moral sense, or conscience, is as much a part of man as his leg or arm"—separate from any religious beliefs. *Found! Thomas Jefferson's Letter to His Nephew*, NEWPORT HISTORICAL SOCIETY (Apr. 13, 2010), https://newporthistory.org/found-thomas-jeffersons-letter-to-his-nephew/; *see also, e.g., Morality*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/morality (last visited July 7, 2026) (defining "morality" as, *inter alia*, "a doctrine or system of moral conduct"; "particular moral principles or rules of conduct"; and "conformity to ideals of right human conduct"); *Morality*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "morality" as, *inter alia*, "[t]he doctrine of right and wrong in human conduct; ethics; moral philosophy"; "[c]onformity with recognized rules of correct conduct; behavior that accords with what is true and honorable"; and

16

"[b]roadly, the study of the problems that arise in life and how they are best handled").

Contrary to the majority's unsupported assertion, there was no reason for Alaska to equate "morality" in Ms. Smith's post with "religion" as opposed to the common, non-religious understanding of the word "morality." As Judge Christen explained (*see* Opinion at 55-56), Ms. Smith herself reinforced the common-sense, non-religious meaning of "morality": during the investigation, she "insisted that she was merely posing a philosophical question rather than asserting to the investigators that her Christian beliefs caused her to conclude that the Equality Act was immoral." *See id.* In short, as Judge Christen aptly summarized, there was no evidence in the record suggesting that Alaska was aware that Ms. Smith's post was religiously motivated at the time Alaska terminated her employment.

It should go without saying that a religious discrimination claim necessarily fails absent a "showing by direct or indirect evidence that the decision-maker knew" that the employee's conduct was motivated by religious beliefs. *See Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987). By imputing Ms. Brown's very different facts into Ms. Smith's circumstances, the majority departed from well-established law. And again, even if Alaska could have inferred that Ms. Smith's posts was religiously motivated, the majority never explained how Alaska's ability to deduce her beliefs was sufficient to create a triable issue of fact

17

in the absence of "specific and substantial" evidence that Alaska acted for discriminatory reasons. *See* Opinion at 35-36.

Although the majority erred with respect to Ms. Brown's claims against Alaska as well, its departure from existing law with respect to Ms. Smith's claims was particularly egregious, as Judge Christen persuasively argued. At the very least, rehearing is needed to correct the majority's error as to Ms. Smith's claims.

## **CONCLUSION**

This case should be reheard by the panel or *en banc* and, upon rehearing, the District Court should be affirmed.

18

DATED:  July 8, 2026          Respectfully submitted,

By  */s/ Lauren Parris Watts*

Lauren Parris Watts, WSBA No. 44064
lpwatts@seyfarth.com
Josh M. Goldberg, WSBA No. 60733
jmgoldberg@seyfarth.com
Seyfarth Shaw LLP
999 Third Ave, Suite 4700
Seattle, WA 98104-4041

Lynn A. Kappelman
lkappelman@seyfarth.com
Dawn R. Solowey
dsolowey@seyfarth.com
Seyfarth Shaw LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210

*Attorneys for Defendant-Appellee*
*Alaska Airlines, Inc.*

19

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 40 of the Federal Rules of Appellate Procedure and Circuit Rule 40-1, the foregoing brief is in 14-Point Times New Roman proportional font and contains 4,097 words, excluding the parts of the brief exempted by Rule 32(f), and thus is in compliance with the requirements of Circuit Rule 40-1(b), which provides that petitions for rehearing may not exceed 15 pages or 4,200 words.

Dated: July 8, 2026

By: */s/ Lauren Parris Watts*

Lauren Parris Watts, WSBA No. 44064
Joshua M. Goldberg, WSBA No. 60733
**SEYFARTH SHAW LLP**
999 3rd Avenue, Suite 4700
Seattle, WA 98104
Phone: 206-946-4910
Email: lpwatts@seyfarth.com
jmgoldberg@seyfarth.com

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby declare that on this 8th day of July, 2026, I caused a copy of *Appellee's Petition for Panel Rehearing or for Rehearing En Banc* to be electronically filed with the Court using the ECF-Filing system. I certify that all participants in the case are registered ECF users, and that service will be accomplished by the ECF system.

DATED this 8th day of July, 2026.

*/s/Kathy Wheat*
Kathy Wheat, Legal Assistant
**SEYFARTH SHAW LLP**
999 3rd Avenue, Suite 4700
Seattle, WA 98104
Phone: 206-946-4910
Email: kwheat@seyfarth.com

21